## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GARY LYNN BONNER, individually, ) | |
| ) | |
|       Plaintiff/Counterdefendant, ) | |
| ) | |
| vs. ) | |
| ) | |
| JO DEE ALDERSON, individually, ) | |
| ) | |
|       Defendant/Counterclaimant. ) | |
| _____ ) | |
| JO DEE ALDERSON, ) | |
| ) | |
|       Plaintiff, ) | Case No. CV02-248-S-LMB (Lead) |
| ) | Case No. CV03-408-S-LMB |
| vs. ) | |
| ) | |
| UNION PACIFIC RAILROAD ) | **FINDINGS OF FACT,** |
| COMPANY, et al., ) | **CONCLUSIONS OF LAW,** |
| ) | **MEMORANDUM DECISION** |
|       Defendants. ) | **AND ORDER** |
| _____ ) | |
| UNION PACIFIC RAILROAD ) | |
| COMPANY, et al., ) | |
| ) | |
|       Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| GARY L. BONNER, ) | |
| ) | |
|       Third-Party Defendant. ) | |
| _____) | |

# I.

## BACKGROUND

This is a consolidated case involving three parties, Jo Dee Alderson (Alderson), Gary L. Bonner (Bonner), and Union Pacific Railroad Company (Union Pacific), arising from events that occurred when Alderson and Bonner were employees of Union Pacific. On February 15, 2005, the parties entered into a settlement agreement terminating all remaining claims and counterclaims in the lead case, Case No. CV02-248-S-LMB.  The only remaining claim is Third-Party Plaintiff Union Pacific's claim for indemnity against Third-Party Defendant Bonner for damages Union Pacific agreed to pay to Alderson in Case No. CV03-408-S-LMB.

The parties appeared before the Court on March 8, 2005, for a bench trial on the remaining indemnity claim. At trial, the parties stipulated to the admission of Union Pacific's four exhibits into evidence: Exhibit A (Complaint filed by Alderson against Union Pacific in this action); Exhibit B (EEOC Complaint filed by Alderson with the Idaho Human Rights Commission (IHRC)); Exhibit C (Right-to-Sue letter issued to Alderson by the IHRC); and Exhibit D (copy of Settlement Agreement entered in this case on February 15, 2005).  *See Def.'s List Exs. & Witnesses for Trial* (Docket No. 115). In addition, the parties entered into a written Trial Stipulation (Docket No. 119) in lieu of presenting evidence at trial.  Finally, the Court ordered the parties to submit closing arguments of counsel in writing.

Having reviewed the record in this case, including the exhibits, the stipulations, the trial briefs, the parties' proposed findings of facts and conclusions of law, and the written closing arguments, the Court enters the following Findings of Fact, Conclusions of Law, and Memorandum Decision and Order.

## II.

### SUMMARY OF RULING

Bonner shall be required to indemnify Union Pacific for Alderson's claims for which Union Pacific was liable under a respondeat superior theory and where indemnification is permitted by law. Bonner shall not be responsible for amounts Union Pacific paid to Alderson for claims in which Union Pacific had its own independent liability and where there is no legal basis for indemnification.

The claims for which indemnity is permitted are claims for *implied* or *equitable* indemnity and, as such, they are governed by Idaho law. *See Weaver v. Searle Bros.*, 128 Idaho 497, 500, 927 P.2d 887, 890 (Idaho 1996). Under Idaho law, the Court has discretion to determine the amount to be paid in indemnity where the indemnitor is found liable. *Id.* The Court treats Union Pacific and Alderson's post-settlement allocation of $47,000 as Union Pacific's recommendation as to the manner in which the Court should exercise its discretion. Bonner submitted no proposal for allocation, but instead argued under Ninth Circuit law that Union Pacific's original failure to allocate the lump sum among the different claims barred Union Pacific from collecting any amount in

indemnity.[1]  Such a harsh result is not required under Idaho law, given that it is an issue for the Court's discretion.  *See Weaver*, 129 Idaho 497, 927 P.2d 887.  The Court concludes that Union Pacific's recommended allocation of the lump sum payment among Alderson's various causes of action is fair and reasonable given the facts and circumstances of this case.  Using the figures in Union Pacific's allocation, the Court concludes that the total amount Bonner owes to Union Pacific in indemnity is $2,500.

In making its Findings of Fact pursuant to Federal Rule of Civil Procedure 52(a), the Court has carefully considered the stipulations of the parties, has thoroughly reviewed all of the exhibits admitted into evidence, and has considered controlling legal authority and counsels' arguments.  To the extent any findings of fact are deemed to be conclusions of law, they will be incorporated, by reference, into the conclusions of law.

At the outset, the Court notes that, to the extent it has concluded that the evidence in the record does not support certain claims or assertions of fact made by the respective parties, they will not be included in the Court's Findings of Fact or otherwise referenced herein.  In the event such claims or assertions of fact are not contained in these Findings of Fact, it is not an oversight or unintentional omission.  Rather, the absence of a mention

---

[1]Plaintiff argues that *Faria v. M/V Louise*, 945 F.2d 1142 (9th Cir. 1991), applies to bar Union Pacific's indemnity claim because it failed to apportion the damages among the different causes of action on February 15, 2005, the date of settlement.  *Faria* stands for the proposition that the party seeking indemnity "bears the burden of proof to show the amount, as well as the fact, of damages."  *Id*. at 1144. In *Faria*, the court concluded that failure to carry the burden of proof as to the proper apportionment of damages from the settlement of a multi-claim lawsuit required dismissal of the indemnity action.  *Id*. at 1145.

of an event or series of events in these Findings is an indication that the evidence does not support a finding and conclusion in favor of the claim or assertion of fact.

The Court will not issue findings on every conceivable issue in a case, but only on those essential facts upon which it bases its decision. *White Indus., Inc. v. Cessna Aircraft Co.,* 845 F.2d 1497, 1499 (8th Cir. 1988) (nothing that Rule 52(a) does not require particularized findings on each piece of evidence the parties present at trial).

The Court also notes that, like the Findings of Fact, the Conclusions of Law have been made after reviewing the evidentiary record, considering the legal authorities submitted and the parties' arguments, and applying applicable legal principles to the facts and stipulations of the parties. For ease in addressing the numerous claims involved in this case, the Court addresses each on a claim-by-claim basis.

## III.

## TITLE VII CLAIMS

### A.    Legal Authority

The parties disagree as to whether there is a right to indemnity for Title VII violations between an employer and its offending employee supervisor. While the United States Supreme Court has not addressed the indemnity issue, it addressed the similar issue of contribution in a Title VII setting in *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO, et al.*, 451 U.S. 77 (1981). There, the employer, Northwest Airlines, having just lost a $2 million back-pay Title VII class-action suit to its female employees, filed suit against two unions asserting a common law right to obtain

contribution, asserting that the unions were at least partially responsible for the statutory

violations.  *Id*.  The Court determined that Title VII does not "expressly create[] a right to

contribution in favor of employers," *id*. at 91, and that employers are not "members of the

class for whose especial benefit . . . Title VII was enacted."  *Id*. at 92.  As a result, the

Court held that "there is no implied right to contribution under [Title VII]."  *Id*. at 95.

     "Whatever may be a federal court's power to fashion remedies in other areas of the

law," the Court noted, "we are satisfied that it would be improper for us to add a right to

contribution to the statutory rights that Congress created in . . . Title VII."  *Id*. at 98.[2]  The

Court also explained that a court's "broad power under § 706(g), 42 U.S.C. § 2000e-5(g),

to fashion relief against all respondents named in a properly filed charge" could not be

invoked when no EEOC charge had been filed against the unions.  *Id*. at 93 n.28.

     Union Pacific argues that *Northwest Airlines* permits indemnity against a co-

defendant, but not against a nonparty.  The Court finds Union Pacific's argument

unpersuasive.  The same argument was rejected in *Anderson v. Local Union No. 3,*

*International Brotherhood of Electrical Workers, AFL-CIO*, 751 F.2d 546 (2d Cir. 1984).

---

[2]The  *Northwest Airlines* Court also noted:

> The liability of petitioner for discriminating against its female cabin attendants is entirely a creature of federal statute.  In almost any statutory scheme, there may be a need for judicial interpretation of ambiguous or incomplete provisions.  But the authority to construe a statute is fundamentally different from the authority to fashion a new rule or to provide a new remedy which Congress has decided not to adopt.  The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.  Both the Equal Pay Act and Title VII of the Civil Rights Act of 1964 are such statutes.  The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs.

451 U.S. at 97 (citations omitted).

That court noted that while the *Northwest Airlines* Court acknowledged a federal court's "broad power" to "apportion damages among Title VII defendants in a judgment," it found "it would be improper for us to *add a right* to contribution to the statutory rights that Congress created in . . . Title VII."  751 F.2d at 548 (quoting *Nw. Airlines*, 451 U.S. at 98) (emphasis added).

To say it very simply, because a plaintiff's Title VII claims arise under the statutory authority of Title VII, apportionment among defendants named by the plaintiff is encompassed by and permitted under Title VII, but a Title VII defendant's indemnity claim against a non-Title VII defendant is a completely different type of claim unauthorized by Title VII or other federal statute.  *See In re Burlington N., Inc. Employment Practices Litig.*, 810 F.2d 601, 610 (7th Cir. 1986) ("The [*Northwest Airlines*] Court held that an employer has no federal statutory or common law right of contribution from a non-defendant union, 451 U.S. at 94, but the Court clearly did not preclude recovery from a union that was a named defendant in a Title VII action.") (referring to the *Northwest Airlines* language regarding the court's broad right under Title VII to apportion damages among all respondents to an EEOC charge).

Here, Union Pacific was the only respondent in the EEOC charge and the only defendant named in the Title VII action.  Simply filing a third-party complaint against an employee of a Title VII defendant employer does not make that employee a Title VII defendant.  Nothing in Title VII allows Union Pacific the same benefits of a plaintiff in a Title VII action; that is, Union Pacific is not entitled to add "defendants," as it argues.  Its

third-party complaint against a nondefendant is a different action for which no statutory authority lies.

Union Pacific also relies on *Biggs v. Surrey Broadcasting Co.*, 811 P.2d 111 (Okla. Civ. App. 1991), for its argument that indemnity is available in Title VII actions. The *Biggs* Court determined that "it appears to be settled *in this state* that an implied contract of indemnity may arise between one who is constructively or vicariously liable for a tort and the wrongdoer, regardless of whether liability is imposed by statute or by a rule of the common law, and irrespective of the existence of an express contract to indemnify." *Id.* at 114 (emphasis added). As a Kansas federal district court noted, *Biggs* does not distinguish *Northwest Airlines*, which rejected contribution based upon the Title VII federal statutory scheme, nor does *Biggs* make clear whether the indemnity was allowed for companion state law claims rather than Title VII claims. *See Gilmore v. List & Clark Const. Co.*, 866 F. Supp. 1310, 1313 n.8 (D. Kan. 1994). This Court agrees with the *Gilmore* Court, in that *Biggs* is unpersuasive on the question of whether there is a right to indemnity in Title VII claims between an employer and the offending employee supervisor.

In summary, the Court agrees with those courts concluding that the *Northwest Airlines* holding which prohibits claims for contribution can be extended to prohibit claims for indemnity. *See Anderson*, 751 F.2d 546; *see Gilmore*, 866 F. Supp. 1310; *see also M.O.C.H.A. Soc'y, Inc., v.  City of Buffalo*, 272 F. Supp. 2d 217, 221 (W.D.N.Y. 2003) ("The primary teaching of *Northwest Airlines* is that, in the absence of an express

statutory provision or some indication of congressional intent to create a right of

contribution in favor of employers, courts cannot entertain contribution claims in the face

of Title VII's 'comprehensive legislative scheme including an integrated system of

procedures for enforcement.'") (quoting *Northwest Airlines*, 451 U.S. at 97).

**B.     Findings of Fact - Title VII Claims**

1.      On June 6, 2002, Bonner filed a Complaint against Alderson in Case No.

CV02-248-S-LMB.  All of Bonner's claims against Alderson were dismissed on summary

judgment.  *Order* (Docket No. 31).  Remaining in that action were the following

counterclaims against Bonner:

        a.      negligence
        b.      battery
        c.      intentional infliction of emotional distress
        d.      negligent infliction of emotional distress
        e.      defamation
        f.      invasion of privacy
        g.      trespass to land
        h.      hostile work environment, sexual harassment, retaliatory and/or
                constructive discharge in violation of public policy.

2.      In 2003, Alderson filed a Complaint against Union Pacific in Case No.

CV03-408-S-LMB, asserting the following causes of action:

        a.      Title VII violations, Idaho Human Rights Act violations, sexual
                discrimination
        b.      bad faith
        c.      breach of public policy
        d.      negligent supervision
        e.      vicarious liability/respondeat superior
        f.      negligence
        g.      hostile work environment/sexual harassment
        h.      retaliatory and/or constructive discharge

       i.     intentional infliction of emotional distress
       j.     negligent infliction of emotional distress
       k.    battery
       l.     defamation
       m.   invasion of privacy
       n.    trespass to land.

3.     Bonner was not a respondent in the EEOC charge, nor was he a defendant in Alderson's Title VII case against Union Pacific.  Union Pacific filed a Third-Party Complaint against Bonner when it filed its answer.  The Court consolidated Case No. CV02-248-S-LMB with Case No. CV03-408-S-LMB.

4.     On February 15, 2005, the parties in Case No. CV02-248-S-LMB entered into a settlement agreement as follows: (a) Alderson dismissed her remaining counterclaims against Bonner for consideration not at issue here; (b) Alderson dismissed her claims against Union Pacific in exchange for the lump sum payment of $47,000.  The $47,000 settlement sum was not allocated among Alderson's various causes of action. After settlement, only Union Pacific's indemnity claim against Bonner in Case No. CV03-408-S-LMB remained.

5.     After Bonner asserted in his trial brief that a party's failure to allocate a lump sum settlement of multiple claims was a bar to an indemnification where the indemnitor was not liable on all claims, Union Pacific and Alderson signed a post-settlement allocation agreement that the $47,000 would be allocated as follows among Alderson's claims:

       a.    $18,000       Title VII Violations

| | | |
|---|---|---|
| b. | $18,000 | Idaho Human Rights Act violations, Sexual Discrimination |
| c. | $1,000 | Bad Faith |
| d. | $1,000 | Breach of Public Policy |
| e. | $1,000 | Negligent Supervision |
| f. | $1,000 | Vicarious Liability/Respondeat Superior |
| g. | $500 | Negligence |
| h. | $500 | Hostile Work Environment/Sexual Harassment |
| i. | $500 | Retaliatory and/or Constructive Discharge |
| j. | $1,000 | Intentional Infliction of Emotional Distress |
| k. | $500 | Negligent Infliction of Emotional Distress |
| l. | $1,000 | Battery |
| m. | $500 | Defamation |
| n. | $1,000 | Invasion of Privacy |
| o. | $500 | Trespass to Land |
| p. | $1,000 | Other claims not specifically alleged in Complaint but bargained for in release.[3] |

6.      Alderson's Complaint makes the following allegations against Union

Pacific and its employees, other than Bonner:

a.      "After Plaintiff learned of Bonner's threat to her co-workers, she

spoke with Al Warner, Manager of Operating Practices.  Plaintiff

voiced her concerns regarding Bonner's behavior.  Mr. Warner did

not provide Plaintiff any assistance, though he told Plaintiff he was

concerned about Bonner's behavior and Plaintiff's safety."  *Def.'s*

*List of Exs. & Witnesses for Trial*, p. 10, ¶ E (Docket No. 115).  This

apparently took place in the fall of 1999.  *See Id*. at p. 37, ¶ 21.

_____

[3]In her Complaint, Alderson reserved the right to seek leave of the Court to amend the complaint prior to trial to seek punitive damages as provided by I.C. § 6-1604, Title VII, the Civil Rights Act, and I.C. § 67-5908.  *Notice of* Removal, p. 30, ¶ 74 (Docket No. 1, Case No. CV03-408-S-EJL).  Alderson never amended her Complaint; therefore, no punitive damages claim was actually asserted against Union Pacific.

b.      "Plaintiff requested that Bonner leave her alone and asked Randy
        Egusquiza, current Manager of Yard Operations, for assistance."  *Id.*
        at p. 10, ¶ G.

c.      "[F]rom approximately November 2, 1999 through February, 2000,
        Bonner did not report to work during regular business hours, and
        refused to communicate with Plaintiff.  During this time, Plaintiff
        continued to report to work.  Bonner's failure to appear at work
        during normal business hours was apparent to Union Pacific's
        agents/employees including Plaintiff's supervisors."  *Id.* at p. 11, ¶
        H.

d.      "On or about July 4, 2000, Union Pacific Railroad Special Agent
        Dan Wooolstenhulme viewed the videotape without Plaintiff's
        permission or knowledge at the Canyon County Sheriff's office.
        None of Union Pacific's agents or employees communicated their
        findings to Plaintiff, or provided her any assistance at any time."  *Id.*
        at p. 12, ¶ O.

e.      "Union Pacific and/or its employees and agents intentionally and/or
        negligently interfered with and harassed Plaintiff during her
        employment with the intent and objective to encourage or force
        Plaintiff to terminate her employment with Union Pacific, which
        conduct by Defendants was, in whole or in part, motivated by

Plaintiff's gender.  Union Pacific further engaged in, or permitted its agents or employees to engage in, disparaging remarks and comments with respect to Plaintiff, and in failing to discourage or prohibit such comments or statements by Union Pacific's agents or employees created a hostile work environment." *Id.* at p. 13–14, ¶ U.

 f. "Union Pacific and its managers knew or reasonably should have known of the discriminating and harassing conduct of Bonner." *Id.* at p. 16, ¶ 20.

 g. "Despite Plaintiff's complaints and Union Pacific's knowledge, Union Pacific and/or its managers, agents, and employees failed to take immediate and appropriate corrective and remedial action which was calculated to and had the effect of terminating the discrimination and harassment and deterring it from occurring again." *Id*. at ¶ 21.

 h. "By their acts and omissions in failing and refusing to take immediate corrective action, Union Pacific and its managers each ratified and acquiesced to Bonner's harassment of the Plaintiff." *Id*. at ¶ 22.

7. Alderson's Complaint alleges that the foregoing facts alleged in § 6 above constitute a Title VII violation.

8.      Alderson filed an EEOC claim prior to filing her Complaint, and the Idaho Human Rights Commission issued a right to sue letter.  *See Def.'s List of Exs. & Witnesses for Trial*, pp. 30–45 (Docket No. 23, Case No. CV03-408-S-LMB).

9.      Union Pacific and Alderson allocated $18,000 of the settlement to the Title VII claim.

10.     Union Pacific and Bonner have stipulated as follows:

   a.      "Union Pacific was liable, potentially liable or its settlement was reasonably necessary to protect its interest on each of the claims asserted against Union Pacific in this case." *Trial Stipulation*, p. 2, ¶ 1 (Docket No. 119).

   b.      "But for the actions of Gary Bonner[,] Union Pacific would not have been liable or potentially liable on any of the causes of action alleged against Union Pacific in this action and Gary Bonner is primarily responsible for the conduct that gives rise to each of the causes of action." *Id*. at ¶ 2.

**C.      Conclusions of Law**

1.      <u>Introduction - Title VII Claims</u>

Union Pacific argues that, based upon the Trial Stipulation, the Court *must* conclude that Bonner is liable to Union Pacific in indemnity for every cause of action in Alderson's Complaint against Union Pacific.  The Court disagrees.  While the parties may argue their position as to the legal effect of a factual stipulation, it remains the Court's

province to determine the legal effect of a stipulation. *See Swift & Co. v. Hocking Valley Ry. Co*., 243 U.S. 281, 289–90 (1917) ("The construction and effect of a written instrument is a question of law. . . . If the stipulation is to be treated as an agreement concerning the legal effect of admitted facts, it is obviously inoperative . . . ."). As to the Title VII and IHRA causes of action, the Court does not find it necessary to discuss the Trial Stipulation in detail because the Court concludes that no liability exists as a matter of law.

      2.    <u>Conclusions of Law - Title VII Claims</u>

          a.    The Court concludes, as a matter of law, that there is no indemnity right arising from Title VII in favor of the employer against the offending supervisor employee.

          b.    The facts in the Trial Stipulation cannot bind the Court to hold Bonner liable where no liability exists at law.

          c.    Union Pacific cannot recover from Bonner the $18,000 paid to Alderson for settlement of the Title VII claim.

**IV.**

**IDAHO HUMAN RIGHTS ACT AND
SEXUAL DISCRIMINATION CLAIMS**

**A.    Legal Authority**

Idaho Code § 67-5901, the Idaho Human Rights Act (IHRA), provides that "[t]he general purposes of this chapter are . . . [t]o provide for execution within the state of the

policies embodied in the federal Civil Rights Act of 1964, as amended . . . ."  IDAHO

CODE ANN. § 67-5901 (2005) (incorporating amendments enacted in H.B. 249, 58th Leg.,

1st Reg. Sess. (Idaho 2005)).  Because the IHRA is intended to further the Civil Rights

Act policies, the Idaho Supreme Court has determined that "[t]he legislative intent

reflected in I.C. § 67-5901 allows our state courts to look to federal law for guidance in

the interpretation of the state provisions."  *Foster v. Shore Club Lodge, Inc.*, 127 Idaho

921, 925, 908 P.2d 1228, 1232 (1995) (citing *O'Dell v. Basabe,* 119 Idaho 796, 811, 810

P.2d 1082, 1097 (1991)).

In *Foster*, the Idaho Supreme Court decided a similar issue, holding that a

supervisor who creates a sexually hostile work environment does *not* have individual

liability under the IHRA.  In so doing, the court emphasized that the IHRA should be

interpreted consistently with Title VII.  The court reasoned:

> The first section of the Idaho Human Rights Act declares that its
> purpose is to "provide for the execution within the state of the
> policies embodied in the federal Civil Rights Act of 1964 ...."  I.C. §
> 67-5901(1).  The legislative intent reflected in I.C. § 67-5901 allows
> our state courts to look to federal law for guidance in the
> interpretation of the state provisions.  *O'Dell v. Basabe*, 119 Idaho
> 796, 811, 810 P.2d 1082, 1097 (1991).  In part III above, we
> construed 42 U.S.C. § 2000e-2(a) consistently with *Miller v.
> Maxwell's International, Inc*., 991 F.2d 583 (9th Cir. 1993), and the
> other courts which disprove individual liability for agents and
> employees of an employer.  We see no reason to allow a different
> result under the Idaho Human Rights Act.  The language of I.C. §
> 67-5911 does not contemplate individual liability for an employer's
> agents or employees, in addition to the employer.

Foster, 127 Idaho at 925–96, 908 P.2d at 1232–33.

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER - PAGE 16

The *Foster* court further reasoned:

> The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees.  Title VII limits liability to employers with fifteen or more employees, 42 U.S.C. § 2000e(b) . . . in part because Congress did not want to burden small entities with the costs associated with litigating discrimination claims.  If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees.

*Id*. at 925, 908 P.2d at 1232.  In short, though this language addresses the similar issue of individual liability and not indemnity, the Idaho Supreme Court has made it clear that courts should look to the nature and purposes of Title VII in defining the limits of the IHRA.

### B.       Findings of Fact -Idaho Human Rights and Sexual Discrimination

1.       The Court incorporates by reference its previous findings of fact set forth in Part III, § B pp. 9-15 regarding the Title VII claim.

2.       Alderson alleged that the facts as alleged in the Complaint constitute a violation of the IHRA.

3.       Union Pacific and Alderson allocated $18,000 of the settlement to this IHRA claim.

### C.       Conclusions of Law - Idaho Human Rights and Sexual Discrimination

1.       Insofar as there is no individual liability of employees or right to indemnity from employees under Title VII, and the IHRA is interpreted by Idaho courts to track

Title VII authority, the Court concludes that there is no indemnity right arising from the IHRA in favor of the employer and against the offending employee supervisor.

2.      The factual stipulation between Union Pacific and Bonner cannot bind the Court to hold Bonner liable where no liability exists as a matter of law.

3.      Union Pacific cannot recover from Bonner the $18,000 paid to Alderson for settlement of the IHRA claim.

## V.

## HOSTILE WORK ENVIRONMENT/SEXUAL HARASSMENT CLAIM

### A.      Legal Authority

Alderson also asserts, in her Complaint, a hostile work environment/sexual harassment claim.  Such a claim exists under Title VII and the IHRA and may exist under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* (FELA).  *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532 (1994) (holding that FELA was broad enough to cover both physical and emotional distress claims).  Here, Alderson characterized her claim as a Title VII/IHRA claim.

### B.      Findings of Fact

1.      In her hostile work environment/sexual harassment claim, Alderson alleged that "Union Pacific's actions set forth above constitute a failure to protect Plaintiff from sex discrimination in her employment and to remedy a hostile work environment in violation of Title VII . . . and Title 67, Chapter 59 of the Idaho Code."  *Notice of Removal*, p. 24, ¶ 52 (Docket No. 1, Case No. CV03-408-S-EJL).

2.      Alderson and Union Pacific allocated $500.00 of the settlement to this claim.

**C.      Conclusions of Law**

1.      Alderson brought this claim under Title VII and IHRA.

2.      Bonner cannot be liable to Union Pacific for this cause of action as a matter of law for the reasons set forth in Sections I and II above.

## VI.

## FELA AND STATE COMMON LAW CLAIMS

**A.      Principles of Indemnity Governing FELA and State Common Law Claims**

Plaintiff's remaining causes of action either (1) are pre-empted by FELA,[4] or, if not pre-empted, (2) may be construed as state common law claims.  The parties have failed to argue or brief the issue of whether characterizing a claim as one brought under FELA or state common law would make any difference in the potential indemnity liability of Bonner.  The Court assumes that if a claim is not cognizable under FELA, it may still be cognizable as a state common law claim.  *See Starks v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 245 F. Supp. 2d 896 (N.D. Ill. 2003) ("[N]othing in the statutory design of FELA or its subsequent judicial interpretations compels a conclusion that FELA 'occupies the field' to such an extent that non-actionable FELA claims cannot be pursued

---

[4]FELA provides, in pertinent part, that "[e]very common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . ." 45 U.S.C. § 51.

as state law torts.") (agreeing with *Harris-Scaggs v. Soo Line R.R. Co.*, 2 F. Supp. 2d 1179, 1185 (E.D. Wis. 1998)).[5]

Under both FELA and state law, a common law right to indemnity exists, and that right is determined by state law. *See Ellison v. Shell Oil Co.,* 882 F.2d 349, 352, 353 (9th Cir. 1989) ("[T]he FELA does not bar railroads from seeking indemnity where state law permits and where another party bears some legal responsibility.").

Under Idaho law, the party seeking indemnity bears the burden of proving the *prima facie* elements of an indemnity claim: "(1) an indemnity relationship, (2) actual liability of an indemnitee to the third party, and (3) a reasonable settlement amount." *Chenery v. Agri-Lines Corp.*, 115 Idaho 281, 284, 766 P.2d 751, 754 (1988) (relying on *Williams v. Johnston*, 92 Idaho 292, 442 P.2d 178 (1968)). The Idaho Supreme Court has determined that the "actual liability" element is met where the indemnitee is not itself at fault, but becomes liable to pay damages to the plaintiff because it is secondarily liable, such as under the theory of respondeat superior. *See Williams*, 92 Idaho 297–98, 442 P.2d at 183–84.

The Idaho Supreme Court has held that "[b]ecause indemnity is an equitable principle, the trial court has "discretion in determining the 'equities' between the parties, including the reasonableness of [the party's] actions . . . ." *Weaver v. Searle Bros.*, 129

---

[5]For an excellent discussion of the pre-emption issue, *see Reidelbach v. Burlington N. and Santa Fe Ry. Co.*, 60 P.3d 418 (Mont. 2002).

Idaho 497, 500, 927 P.2d 887, 890 (1996) (quoting *Griggs. v. Safeco Ins. Co. of Am.*, 103

Idaho 790, 792, 654 P.2d 378, 380 (1982)).

## VII.

## THE PARTIES' TRIAL STIPULATION

Because the Trial Stipulation is relevant to Alderson's remaining claims, the Court

shall first address the legal effect of the Trial Stipulation in the context of indemnity.  In

order to show entitlement to indemnity on each claim, Union Pacific must demonstrate

that (1) there is an indemnity relationship between itself and Bonner; (2) that Union

Pacific was actually liable to Alderson; and (3) that the settlement amount between Union

Pacific and Bonner was reasonable.  *See Chenery*, 115 Idaho at 284, 766 P.2d at 754.

Union Pacific and Bonner disagree as to how the law should be applied to their

factual stipulations.  Union Pacific argues that the Trial Stipulation provides the facts

necessary to show that Bonner is liable to Union Pacific in indemnity for all of

Alderson's claims, and that the Court must determine as a matter of law that Union

Pacific is entitled to indemnity from Bonner on all claims.  Bonner disagrees.

In the Trial Stipulation, Union Pacific and Bonner first agreed that "Union Pacific

was liable, potentially liable or its settlement was reasonably necessary to protect its

interest on each of the claims asserted against Union Pacific in this case."  *Trial*

*Stipulation*, p. 2, ¶ 1 (Docket No. 119).  Union Pacific argues that this statement

necessarily means that Union Pacific has met its task in proving the second element

required for a conclusion that it is entitled to indemnity on every claim.  The Court agrees

that, as to the respondeat superior claims, where Union Pacific has no fault, the second *Chenery* element is met by the facts in the Trial Stipulation.  However,  as to claims in which Union Pacific would be independently liable and Bonner could not be liable, such as negligent supervision, the Trial Stipulation's statement of Union Pacific's reasons for settlement shows merely that Union Pacific settled the case to cover its own independent liability.

Union Pacific and Bonner next agreed: "But for the actions of Gary Bonner Union Pacific would not have been liable or potentially liable on any of the causes of action alleged against Union Pacific in this action and Gary Bonner is primarily responsible for the conduct that gives rise to each of the causes of action."  *Id.* at ¶ 2.  Union Pacific argues that the legal effect of this language is that Bonner should be held liable in indemnity on all of Alderson's claims.  Contrarily, Bonner argues that this language simply acknowledges that "[t]here is no question that Union Pacific would not have been sued by Ms. Alderson but for the actions of Gary Bonner." *Bonner's Supplemental Post-Trial Brief*, p. 2 (Docket No. 124).

As above, the Court concludes that this stipulation language does not establish an element of indemnity on those claims in which Bonner has no liability.  On the respondeat superior claims, Bonner's conduct was both the "cause in fact"[6] and the

---

[6]A clear example of "cause in fact" versus "proximate cause" is discussed in *Nelson by and Through Stuckman v. Salt Lake City*, 919 P.2d 568 (Utah 1996).  There, a four-year-old child fell into a river and sustained significant brain damage and other injuries.  The child sued the city for failure to maintain a fence that would have prevented the child from reaching the river.  The court reasoned:

Finally, the parties dispute two issues of causation.  First, Nelson maintains that his

(continued...)

proximate, or legal cause, of the injury;[7] therefore, the stipulation provides the factual

foundation to hold Bonner liable for Alderson's damages that Union Pacific paid.

However, on the claims where Alderson alleged that Union Pacific had its own

independent duty to oversee and control Bonner's wrongdoing, Bonner's conduct may

have been a "cause in fact," but Union Pacific's conduct was alleged to have been the

---

[6](...continued)
>injury was caused by the breach in the fence, not by the Jordan River. Defendants, by contrast, assert that the river was the proximate cause of the injury. Which condition proximately caused plaintiff's injuries is a question of fact appropriately left for the jury. *See McDaniel v. Sunset Manor*, 220 Cal.App.3d 1, 269 Cal.Rptr. 196, 199 (1990).
>
>The City confuses actual cause and proximate cause. While the Jordan River is undoubtedly the actual cause of Nelson's injury, it may not be the proximate cause. *See Little Am. Ref. Co. v. Leyba*, 641 P.2d 112 (Utah 1982). As we previously noted, "It is common place in the law that an act, omission, or force may be an actual cause, but not a proximate cause." *Bennion v. LeGrand Johnson Constr. Co.*, 701 P.2d 1078, 1083 (Utah 1982).

[7]The following excellent explanation of causation is found in the *Corpus Juris Secundum*:
>Causation or legal cause in a negligence action consists of two components: actual cause or cause in fact and proximate cause. It has been held that courts have often conflated cause in fact and legal causation into "proximate cause," but the two are conceptually distinct. The legal principle of causation requires a two-tiered analysis: the first tier is a determination of whether an action in question was the cause-in-fact of damages, and the second tier requires a determination of whether the action proximately caused the damages. An act, omission, or force may be an actual cause, but not a proximate cause and a plaintiff must adequately establish the cause in fact for legal cause or proximate cause to become a relevant issue. A plaintiff must adequately establish the cause in fact first, and the legal cause or proximate cause becomes a relevant issue only after plaintiff establishes cause in fact. Finally, it has also been held that the element of causation may be broken into factual or "but-for" causation and legal or proximate causation; "factual causation," or "but-for causation," asks whether a complained of injury or damage would have occurred but for the act or omission of the party in question, while "proximate causation" or "legal causation" asks whether an act or omission of party is of a nature that a court of law will recognize it as the legal cause of an injury.
>
>It has also been held that proximate cause contains two prongs: (1) cause in fact, and (2) legal cause of an injury for the purposes of a negligence action, with "causation in fact" proved by establishing the injury would not have occurred "but for" the defendant's negligence, which is generally a question for the jury, and "legal cause" proved by establishing foreseeability. Stated alternatively, proximate cause consists of two elements: cause-in-fact and foreseeability; these elements cannot be established by mere conjecture, guess, or speculation.

65 C.J.S. *Negligence* § 193 (2005).

proximate or legal causation that supports liability.  Union Pacific must meet its burden of proof to show that Bonner is the proximate legal cause for each claim.  The Trial Stipulation fails in this task.

Indemnity is available only in those situations where a "person who without fault on his part is compelled to pay damages occasioned by the negligence of another."  *May Trucking Co. v. Int'l Harvester Co*., 97 Idaho 319, 321, 543 P.2d 1159, 1161 (1975). Therefore, in any instance in which Union Pacific had its own independent liability, indemnity is not available, and a stipulation as to factual causation cannot bind the Court to find indemnity liability where none exists at law.  Implied indemnity is a principle of equity, and it would not be equitable to hold Bonner liable for claims that are directed solely and independently at Union Pacific.

As to the intentional tort claims where Alderson could have recovered from Union Pacific on only one theory,[8] that Bonner was able to commit his tort because of Union Pacific's own failure to supervise and control Bonner, Bonner's conduct, again, is at most a factual cause, and Union Pacific's and Bonner's supervisors' acts and omissions are the proximate cause of the injury.  Again, on these causes of action, Union Pacific is unable to show that it is a party without fault; therefore, it cannot obtain indemnification.

Within this context, the Court will now review each of Alderson's claims for which Union Pacific asserts an indemnity right against Bonner.

---

[8]There is no evidence in the record that Alderson could have recovered from Union Pacific for the intentional torts committed by Bonner on the theory that he committed the wrongful acts during the course and scope of his Union Pacific employment and for an employment purpose.

# VIII.

## BAD FAITH

### A.     Legal Authority

A covenant of good faith and fair dealing is implied in every employment

relationship, including at-will employment.  *Jenkins v. Boise Cascade Corp*., 108 P.3d

380, 389–90 (Idaho 2005).  The standard for determining whether the covenant has been

breached does not involve a "judicial inquiry into the subjective intentions of the party

who is alleged to have violated the covenant," but rather it is "an objective determination

of whether the parties have acted in good faith in terms of enforcing the contractual

provisions."  *Id*. at 390.

### B.     Findings of Fact - Bad Faith

1.     After incorporating, by reference, the factual allegations of the Complaint,

Alderson alleged: "At all relevant times, Union Pacific had a duty to act with good faith

and fair dealing with respect to Plaintiff pursuant to the employment relationship between

Plaintiff and Union Pacific. . . . Union Pacific has, by its conduct, acts and omissions,

breached this duty of good faith and fair dealing owed to Plaintiff."  *Def.'s List Exs. &*

*Witnesses for Trial*, p. 17, ¶¶ 28–29 (Docket No. 115).

2.     Alderson and Union Pacific allocated $1,000 of the settlement to this claim.

C.      **Conclusions of Law - Bad Faith**

1.      Union Pacific is not entitled to recover from Bonner damages paid to Alderson for its own actions or for Bonner's supervisors' actions in failing to address Bonner's conduct toward Alderson.

2.      Alderson could have recovered on a bad faith theory on one of two grounds: either that (1) Union Pacific, through its agent Bonner, caused the constructive termination of Alderson on bad faith grounds, and Union Pacific is liable on a respondeat superior basis, or that (2) Union Pacific, through its other agents, acted in bad faith in failing to remedy the Bonner situation, and has its own independent liability.  Bonner would be liable to Union Pacific on the first theory, but not on the second theory.

3.      Because the facts alleged in the Complaint support both a respondeat superior theory of liability for which Bonner would be liable and an independent theory of liability for which Union Pacific would alone be liable, the Court concludes that it is fair and equitable to require Bonner to indemnify Union Pacific for the settlement amount for this claim, which is $1,000.

## IX.

## BREACH OF PUBLIC POLICY

A.      **Legal Authority**

The Ninth Circuit Court of Appeals has held that Title VII does not pre-empt a state law claim for termination in violation of public policy.  *Utley v. Varian Assocs., Inc.*, 811 F.2d 1279 (9th Cir. 1987).  In Idaho, an employer cannot terminate an employee for a

reason that violates public policy.  *Sorensen v. Comm Tek, Inc*., 118 Idaho 664, 668, 799 P.2d 70, 74 (1990).  This public-policy exception has been held to apply when a discharged employee refused to commit an unlawful act, when an employee performed an important public obligation, and when an employee exercised certain legal rights or privileges.  *Id*.  In other words, the public-policy exception has been permitted in several different situations. *See, e.g*., *Watson v. Idaho Falls Consol. Hosps., Inc.*, 111 Idaho 44, 720 P.2d 632 (1986) (protecting participation in union activities); *Ray v. Nampa Sch. Dist. No. 131*, 120 Idaho 117, 814 P.2d 17 (1991) (protecting reports of electrical building code violations); *Hummer v. Evans*, 129 Idaho 274, 923 P.2d 981 (1996) (protecting compliance with a court issued subpoena). The Idaho Supreme Court has also indicated that the public-policy exception would apply if an employee were discharged for refusing to date her supervisor.  *Sorensen*, 118 Idaho at 668, 799 P.2d at 74 (citing *Monge v. Beebe Rubber Co.*, 316 A.2d 549 (N.H. 1974)). In *Sorensen,* the Idaho Supreme Court implied that if the reported conduct constituted a statutory violation, it would more likely than not fall under the protection of the public-policy exception to the at-will doctrine.  *Sorensen*, 118 Idaho at 668, 790 P.2d at 74.  There is no Idaho case that holds that a public-policy wrongful-termination claim has been pre-empted by the Idaho Human Rights Act.

### B.    Findings of Fact - Breach of Public Policy

1.    Alderson alleged: "During the existence and application of the employment relationship between Plaintiff and Union Pacific, there was an implied covenant and condition prohibiting these Defendants, and those acting on its behalf, from taking

adverse action against Plaintiff for reasons which contravene public policy." *Def.'s List Exs. & Witnesses for* Trial, p. 18, ¶ 32 (Docket No. 115).

2.      Alderson also alleged that during this time period, the following public policies applied: (a) Title VII; (b) IHRA; and (c) Idaho Code § 18-7303, which makes it a crime for any person to deny another person the right to work by any form or character of discriminatory or unequal treatment because of gender.

3.      Alderson and Union Pacific allocated $1,000 of the settlement to this claim.

**C.      Conclusions of Law - Breach of Public Policy**

1.      Alderson could have recovered against Union Pacific on this theory on one of two grounds: either that (1) Bonner, as agent of Union Pacific, constructively terminated Alderson on grounds that were contrary to public policy, making Union Pacific liable on a respondeat superior basis; or that (2) Union Pacific, through its other agents, constructively terminated her on grounds that were against public policy in failing to remedy Bonner's wrongful conduct.  Bonner would be liable to Union Pacific on the first theory, but not on the second theory.

2.      As above, because the facts alleged in the Complaint support both theories, the Court concludes that it is equitable to require Bonner to indemnify Union Pacific for the settlement amount for this claim, which is $1,000.

# X.

# NEGLIGENCE

## A.    Legal Authority

Common law negligence claims asserted against a railroad by a railroad employee are preempted by FELA where (1) it is alleged that the negligence caused a physical impact, or (2) an emotional injury meets the zone of danger test.  *See Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 555 (1994).[9]   Where the subject matter of the Complaint is not physical injury, the Court assumes that there remains a state negligence cause of action.

---

[9]If the employee-victim is asserting a claim of physical injury caused by negligence of the employer or one of its employees, the following relaxed standards apply in determining liability for the FELA cause of action (not liability for the indemnity claim, see discussion below):

> Negligence, as used in the FELA, finds its base in common law concepts of negligence and injury.  In order for a plaintiff to recover in a FELA cause of action, he or she must prove the traditional common law components of negligence: duty, breach, foreseeability, causation, and injury.  Although based on common law negligence, the FELA is "an avowed departure from the rules of the common law."  "The FELA 'was enacted because Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with [a] far more drastic duty ....'"  In order to ensure that the railroad would remain directly liable in damages to the employee, the FELA abolished the defense of assumption of risk.  Additionally, it removed the common law bar of contributory negligence.  The FELA also abandoned the imponderable standard of "proximate cause" and replaced it with the broad and remedial standard of "in whole or in part causation."  In short, "[t]he law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant.  The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence."

Michael Beethe, Comment, *Railroads Suing Injured Employees: Should the Federal Employers' Liability Act Allow Railroads to Recover from Injured Railroad Workers for Property Damages?*, 65 UMKC L. REV.  231 (1996).

However, while the employer's negligence to the injured employee is determined under the relaxed FELA standard (that the allegedly at-fault indemnitor's negligence played some part, however slight, in producing the injury, *see Rogers v. Miss. Pac. R.R.*, 352 U.S. 500, 506 (1957)), the employer's entitlement to indemnity from the allegedly at-fault indemnitor in an indemnity action is based upon the indemnitor having *proximately caused* the employee's injury, a higher standard.  *Armstrong v. Kan. City S. Ry. Co.*, 752 F.2d 1110, 1114 (5th Cir. 1985).

### B.   Findings of Fact - Negligence

1.      Alderson alleges that Union Pacific was negligent for failing to protect her privacy; namely, Union Pacific left the videotape that contained nude footage of her in a place where it could be viewed by the public.  *Def.'s List Exs. & Witnesses for Trial*, p. 21, ¶ 43 (Docket No. 115).

2.      Alderson alleged that "Union Pacific and its agents/employees have a duty to not unduly harass, vex, or annoy Plaintiff in the workplace, in her private residence, and in her daily life.  Union Pacific and/or its agents or employees, breached this duty by creating a hostile work environment, stalking, photographing, trespassing, and committing of other actionable behaviors towards Plaintiff."  *Id*. at ¶ 44.

3.      Alderson and Union Pacific allocated $500.00 of the settlement to this claim.

### C.   Conclusions of Law - Negligence

1.      Alderson did not state a "physical impact" type of negligence claim, and therefore, her claim must be treated as a state law negligence claim rather than a FELA claim.

2.      Alderson's claim can be divided into two parts.  The first part is a claim solely against Union Pacific for failing to safeguard her privacy by mishandling the videotape of her.  This claim is not in the nature of a respondeat superior claim, but addresses Union Pacific's own liability.  Therefore, Bonner is not liable to Union Pacific in indemnity.  The second part of the claim almost exclusively refers to Bonner's actions

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER - PAGE 30

in harassing Plaintiff.  Any of the harassment that occurred in the course and scope of Bonner's employment, such as at work and during work-related travel,  would have rendered Union Pacific liable.

     3.     The Court finds it equitable to require Bonner to indemnify Union Pacific for this second part of the negligence claim.  The negligence claim was settled for $500.00 which Bonner owes Union Pacific.

## XI.

## NEGLIGENT SUPERVISION

### A.     Legal Authority

Negligent supervision is a claim that falls under FELA.  *Higgins v. Metro-N. R.R. Co.*, 318 F.3d 422 (2d Cir. 2003).  To succeed on a negligent supervision claim, a plaintiff must demonstrate that the employer "knew or should have known prior to the [commission of the tort] of propensities of the [employee] to commit such [a tort]." *Harrison v. Miss. Pac. R.R. Co*., 372 U.S. 248, 249 (1963).

### B.     Findings of Fact - Negligent Supervision

     1.     Alderson alleged: "Defendant Union Pacific Railroad knew of [or] should have known that its agent/employee Gary L. Bonner committed certain acts within and outside of the scope of his employment as described in this Complaint while on the premises of Union Pacific property and likewise used instruments and/or property of Union Pacific to commit the acts described in this Complaint while off of Union Pacific premises.  In addition, Union Pacific knew or should have known of its agent/employee

Bonner's dangerous propensities but intentionally or negligently failed to act to control said employee's actions so that he would not injure Plaintiff or other third parties." *Def.'s List Exs. & Witnesses for Trial*, p. 19, ¶ 37 (Docket No. 115).

2.     Alderson and Union Pacific allocated $1,000.00 of the settlement to this claim.

### C.     Conclusions of Law - Negligent Supervision

1.     This claim was aimed solely at the actions of Union Pacific and Bonner's supervisors for failure to supervise Bonner.

2.     No indemnity right exists for this cause of action, as Bonner cannot be held liable for failure to supervise himself.

## XII.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### A.     Legal Authority

A claim for negligent infliction of emotional distress and sexual harassment is cognizable under FELA under the following circumstances: that the plaintiff suffered either (1) a physical injury, or (2) a physical manifestation of an emotional injury so long as the plaintiff sustained such injuries while in the "zone of danger." *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 555 (1994).  "[T]he zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id*. at 547–48.

In *Metro-North Commuter Railroad Co. v. Buckley*, 521 U.S. 424 (1997), the Supreme Court further explained that "the words 'physical impact' do not encompass every form of 'physical contact.'" *Id*. at 432. Rather, the phrase includes only contact "that caused, or might have caused, immediate traumatic harm." *Id*. at 430. In *Higgins v. Metro-North Railroad Co*., 143 F. Supp. 2d 353, 359 (S.D.N.Y. 2001), *aff'd*, 318 F.3d 422 (2d Cir. 2003), the court applied the *Gottshall-Buckley* rule in a factual setting where a co-worker had slapped the female plaintiff on the buttocks. The plaintiff testified that she was "hurt" by the slap but not physically injured, and she was never in apprehension of physical or sexual harm. On these facts, the court held that the "uninvited contacts, however emotionally repugnant, do not constitute physical impacts under FELA." *Higgins*, 143 F. Supp. 2d at 359. Similarly, another court has interpreted the *Gottshall-Buckley* rule to require that, where the plaintiff is asserting that she was placed in immediate risk of physical harm by sexually-abusive conduct, the risk of immediate harm be more than minimal to state a FELA claim for emotional damages arising from sexual harassment. *Nelson v. Metro-N. Commuter R.R.*, 235 F.3d 101, 113 (2d Cir. 2000).

If a plaintiff decides to bring a state law claim rather than a FELA claim, she must show either a physical impact *or* that (1) the defendant's conduct was "outrageous," (2) the mental anguish suffered was "severe," *Rasmuson v. Walker Bank & Trust Co.*, 102 Idaho 95, 625 P.2d 1098 (1981), and (3) there is proof of a physical manifestation of an injury caused by the negligently inflicted emotional distress, *Evans v. Twin Falls County*, 118 Idaho 210, 218, 796 P.2d 87, 95 (1990).

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER - PAGE 33

**B.      Findings of Fact - Negligent Infliction of Emotional Distress**

1.      Alderson alleged: "Union Pacific knew or should have known that its

conduct or the conduct of its agents/employees would inflict emotional distress upon the

Plaintiff."  *Def.'s List Exs. & Witnesses for* Trial, p. 25, ¶ 60 (Docket No. 115).

2.      Alderson alleged that her injuries consisted of "past and future mental and

emotional distress, embarrassment, humiliation, loss of enjoyment of life, psychological

expense, and feelings of loss of safety and security . . . ."  *Id.* at ¶ 61.

3.      Nowhere does Alderson allege any physical manifestations of injury.

4.      Alderson and Union Pacific allocated $500.00 of the settlement to this

claim.

**C.      Conclusions of Law - Negligent Infliction of Emotional Distress**

1.      Because there are insufficient physical-injury allegations, Alderson has

failed to state a claim upon which relief can be granted.

2.      Union Pacific has not met its burden of proof to show that it was liable to

Alderson on this cause of action.

3.      Bonner is not liable to Union Pacific on this cause of action.

## XIII.

## RETALIATORY AND/OR CONSTRUCTIVE DISCHARGE

**A.      Legal Authority**

Neither party has argued that this cause of action is pre-empted by Title VII,

IHRA, or  FELA.  The Court assumes that a common law cause of action is available, and

that its elements are the same as or similar to the elements of a Title VII or IHRA claims. *See Rupp v. Purolator Courier Corp.*, 790 F. Supp. 1069 (D. Kan. 1992). A prima facie case of retaliatory discharge includes the following elements: "(1) the complainant engaged in a protected activity . . . ; (2) the complainant suffered an adverse employment action; and (3) there was a causal link between the protected activity and the employer's action." *Raad v. Alaska State Comm'n for Human Rights*, 86 P.3d 899, 905 (Alaska 2004).

### B.    Findings of Fact - Retaliatory and/or Constructive Discharge

1.    Alderson asserted: "After Plaintiff complained of Bonner's sexual harassment, Union Pacific's management did nothing to separate Bonner and Plaintiff; and Union Pacific likewise failed to remedy Plaintiff's hostile work environment. By failing to remedy the sexual harassment of Plaintiff, Plaintiff was punished by Union Pacific because she feared for her job. As a result, Plaintiff was forced to continue to work with Bonner in order to retain her job with Union Pacific. Because of Union Pacific's failure to act appropriately with respect to Bonner, as set forth above, Plaintiff was forced to leave her family, her home of 24 years, and to seek a lateral transfer outside of the state of Idaho." *Def.'s List Exs. & Witnesses for Trial*, pp. 23–24, ¶ 54 (Docket No. 115).

2.    In other words, Plaintiff asserts that the out-of-state transfer is the equivalent of a retaliatory or constructive termination.

3.    Alderson and Union Pacific settled this claim for $500.00.

### C.      Conclusions of Law - Retaliatory and/or Constructive Discharge

1.      This is a cause of action directed at Union Pacific and Bonner's supervisors for failing to correct his action.  Bonner cannot be held liable for his employer's and supervisors' failure to correct his action.

2.      Bonner is not liable to Union Pacific for this cause of action.

## XIV.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### A.      Legal Authority

Neither the United States Supreme Court nor the Ninth Circuit Court of Appeals, in a published opinion, has determined whether a claim for intentional infliction of emotional distress exists under FELA.  Other courts have determined that FELA *does* include such a claim, but it usually must be accompanied by physical contact or threat of physical contact.  *Higgins*, 143 F. Supp. 2d at 361.

"In Idaho, four elements are necessary to establish a claim of intentional infliction of emotional distress: (1) the conduct must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe." *Edmondson v. Shearer Lumber Prods.*, 139 Idaho 172, 179, 75 P.3d 733, 740 (Idaho 2003).

**B.      Findings of Fact - Intentional Infliction of Emotional Distress**

1.      Alderson alleged: "Each of Bonner's acts of repeated stalking, videotaping,

trespassing, and obsessive compulsive behaviors regarding the Plaintiff constituted

intentional, reckless, or wrongful conduct (said conduct was both extreme and

outrageous), and said conduct caused Plaintiff to suffer severe psychological or emotional

distress.  As set forth above, Union Pacific is vicariously liable for Bonner's conduct."

*Def.'s List Exs. & Witnesses for Trial*, p. 24, ¶ 57 (Docket No. 115).

2.      Union Pacific alleged in its answer that Bonner committed the acts outside

the course and scope of employment.  *Answer & Third-Party Compl.*, p. 17, ¶ 34 (Docket

No. 4, Case No. CV03-408-S-EJL).

3.      Alderson and Union Pacific allocated $1,000 of the settlement to this claim.

**C.      Conclusions of Law - Intentional Infliction of Emotional Distress**

1.      Union Pacific is not liable for intentional torts Bonner committed outside

the course and scope of his employment.  Alderson's allegations can be construed to

show that Bonner committed the torts outside the course and scope of employment and

for his own personal motives, as Union Pacific's Answer alleges.  There are insufficient

facts to show that Bonner committed the alleged intentional torts within the course and

scope of employment and *not* for personal motives unrelated to the furtherance of Union

Pacific's business.

2.      Alderson may have been able to recover on the alternative theory that

Union Pacific was liable for this intentional tort as a result of Union Pacific's negligence

in hiring, supervising, or failing to fire the intentional wrongdoer.  However, this is a

theory of liability directed at the employer's own wrongful actions or the wrongful

actions of Union Pacific's other employees, not Bonner.

    3.    Union Pacific cannot recover against Bonner in indemnity for this claim

under either theory.

## XV.

## BATTERY

### A.    Legal Authority

FELA covers any "negligence" claim which inflicts bodily injury upon the

employee.  *Monarch v. S. Pac. Transp. Co*., 70 Cal. App. 4th 1197, 1210 (Cal. Ct. App.

1999).  In *Nelson v. Metro-North Commuter Railroad*, 235 F.3d 101 (2d Cir. 2000), the

plaintiff alleged that she had suffered severe emotional distress as a result of her co-

worker slapping her on the buttocks, grabbing her breasts, and making lewd comments

about her.  The Court granted summary judgment in favor of the railroad because,

although the alleged conduct was offensive, the plaintiff failed to show an immediate

threat of physical harm.  In the alternative, a common law battery claim is available upon

a respondeat superior or negligent supervision theory.  *Higgins*, 143 F. Supp. 2d at

361–62.

**B.**     **Findings of Fact - Battery**

1.     Alderson's battery claim is based upon Bonner's unwanted hugging, sexual touching, videotaping, and stalking.  *Def.'s List Exs. & Witnesses for Trial*, p. 26, ¶ 63 (Docket No. 115).

2.     Alderson and Union Pacific allocated $1,000.00 of the settlement to this claim.

**C.**     **Conclusions of Law - Battery**

1.     Alderson's allegations do not state a FELA claim, and thus it is construed as a state law battery claim.

2.     Union Pacific is not liable for intentional torts Bonner committed outside the course and scope of his employment and not in the furtherance of Union Pacific's business.  Alderson's allegations can be construed to show that Bonner committed the torts outside the course and scope of employment, and Union Pacific's Answer also so alleges.

3.     Alderson may have been able to recover on the alternative theory that Union Pacific was liable for this intentional tort as a result of Union Pacific's negligence in hiring, supervising, or failing to fire the intentional wrongdoer.  However, this is a theory of liability directed at the employer's own wrongful actions or the wrongful actions of other Union Pacific employees, not Bonner.

4.     Union Pacific cannot recover against Bonner for this claim under either theory.

## XVI.

## DEFAMATION

### A.    Legal Authority

Defamation is a state-law cause of action that is not pre-empted by FELA because

it "does not result in a physical impact and is therefore not the type of claim that FELA

was designed to encompass."  *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1082

(9th Cir. 2003), *amended by* 340 F.3d 767 (9th Cir. 2003).  An employer may be held

liable for defamatory statements made by its employees under the theory of respondeat

superior.  *Rivera*, 331 F.3d at 1081.

### B.    Findings of Fact - Defamation

1.    Alderson alleged that "Union Pacific's agent/employee Bonner has defamed

Plaintiff both through: 1) repeated and obsessive defamatory statements in the form of the

videotape which is of a highly personal nature, and 2) slanderous statements made by

Bonner regarding Plaintiff's moral turpitude and unchastity.  Said video and statements

were then published to third parties."  *Def.'s List Exs. & Witnesses for Trial*, pp. 26–27, ¶

66 (Docket No. 115).

2.    Alderson and Union Pacific allocated $500.00 of the settlement to this

claim.

### C.    Conclusions of Law - Defamation

1.    A requirement of a defamation claim is the publication of the defamatory

statements to third parties.  There is no allegation that *Bonner* published the video to third

parties; there is an allegation that *Union Pacific*, through another employee, allowed third parties to view the video. Alderson's IHRA Complaint can be construed to include allegations of defamation that Bonner made at work.

2. Because Alderson's allegations can be construed to show that Union Pacific and Bonner each have independent fault in the alleged defamation, the Court finds it equitable to charge Bonner $500.

## XVII.

### INVASION OF PRIVACY

#### A. Legal Authority

Invasion of privacy is not a claim encompassed by FELA, but it may be asserted against the employer as a state common law claim. *See Wiora v. Harrah's Ill. Corp.*, 68 F. Supp. 2d 988 (N.D. Ill. 1999). An invasion of privacy occurs when the defendant invades "something secret, secluded or private pertaining to the plaintiff . . . .." *Peterson v. Idaho First Nat'l Bank,* 83 Idaho 578, 584, 367 P.2d 284 (1961) (relying on RESTATEMENT OF TORTS, § 867).

#### B. Findings of Fact - Invasion of Privacy

1. Plaintiff alleged that "[e]ach of Union Pacific's agent/employee Bonner's acts of repeating stalking, videotaping, trespassing, and obsessive compulsive behaviors have adversely intruded into the privacy or seclusion of Plaintiff's sanctity of her residence in such a manner that would be highly objectionable and offensive to the average person." *Def.'s List Exs. & Witnesses for Trial*, p. 27, ¶ 69 (Docket No. 115).

2.      Alderson and Union Pacific allocated $1,000 of the settlement to this claim.

**C.     Conclusions of Law - Invasion of Privacy**

1.      Union Pacific is not liable for intentional torts Bonner committed outside the course and scope of his employment.  Alderson's allegations can be construed to show that Bonner committed the torts outside the course and scope of employment, as Union Pacific's Answer alleges.

2.      Alderson may have been able to recover on the alternative theory that Union Pacific was liable for this intentional tort as a result of Union Pacific's negligence in hiring, supervising, or failing to fire the intentional wrongdoer.  For example, the video-taping incident occurred in June 2000, and Alderson had reported Bonner's previous wrongdoing to Manager of Operating Practices Al Warner in 1999, approximately one year earlier.   Therefore, Union Pacific was liable, or potentially liable, to Alderson for its own failures that could have prevented the invasion of privacy.

3.      Union Pacific cannot recover against Bonner for this claim under either theory.

**XVIII.**

**TRESPASS TO LAND**

**A.     Legal Authority**

Under Idaho law, "trespass" is the wrongful interference with the right of exclusive possession of real property.  *Moon v. N. Idaho Farmers Ass'n*, 140 Idaho 536, 96 P.3d 637 (2004), *cert. denied*, 125 S. Ct. 1299 (2005).

**B.**     **Findings of Fact - Trespass to Land**

1.     Alderson alleged: "Each of Union Pacific's agent/employee Bonner's acts of repeated stalking, videotaping, trespassing, and obsessive compulsive behaviors have adversely intruded in the privacy or seclusion of Plaintiff's sanctity in her residence by an act of physical invasion onto the land and property of Plaintiff's residence without permission or consent, and in such a manner that would be highly objectionable and offensive to the average person." *Def.'s List Exs. & Witnesses for Trial*, p. 28, ¶ 72 (Docket No. 115).

2.     Alderson and Union Pacific allocated $500.00 of the settlement to this claim.

**C.**     **Conclusions of Law - Trespass to Land**

1.     Union Pacific is not liable for intentional torts Bonner committed outside the course and scope of his employment.  Alderson's allegations can be construed to show that Bonner committed the torts outside the course and scope of employment, as Union Pacific's Answer alleges.

2.     Alderson could have recovered on the alternative theory that Union Pacific was liable for this intentional tort as a result of Union Pacific's negligence in hiring, supervising, or failing to fire the intentional wrongdoer.  However, this is a theory of liability directed at the employer's own wrongful actions, not Alderson's.

3.      Union Pacific cannot recover against Bonner for this claim under either

theory.

## XIX.

## VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

### A.      Legal Authority

"At common law . . . the employee who commits a tort for which his employer is

liable under the doctrine of respondeat superior has a duty to indemnify the employer if

the latter is sued and loses."  *Delgado v. Stegall,* 367 F.3d 668, 674 (7th Cir. 2004) (citing

Dan B. Dobbs, *The Law of Torts* § 273, p. 733 (2000).  "Vicarious liability" or

"respondeat superior" is not a cause of action in itself, but is a means of assigning liability

to Union Pacific for the actions of Bonner as to the other common law causes of action.

### B.      Findings of Fact - Vicarious Liability/Respondeat Superior

1.      Alderson's cause of action for "vicarious liability" or "respondeat superior"

first realleges all of the factual allegations detailing the actions of Bonner and the

inactions of Union Pacific.  *Def.'s List Exs. & Witnesses for Trial*, p. 20, ¶ 39 (Docket

No. 115).

2.      Alderson next alleges that "Union Pacific Railroad knew or should have

known that its agent/employee Bonner committed certain tortious actions described in this

Complaint while he was acting as an agent and/or employee of Union Pacific, and said

acts were committed within the course and scope of Bonner's agency and employment

with Union Pacific Railroad." *Id.* at ¶ 40.

3.      Alderson then alleges: "As a direct and proximate result of Defendants'

negligent, intentional, reckless or wrongful conduct, all Defendants are jointly and

severally liable for the faults of the others pursuant to Idaho Code § 6-803 and the

common law doctrine of respondeat superior." *Id.* at ¶ 41.

4.      Alderson and Union Pacific allocated $1,000 of the settlement to this

"claim."

### C.      Conclusions of Law - Vicarious Liability/Respondeat Superior

1.      While this is not a "cause of action" in and of itself, it is clear that Alderson

could have recovered from Union Pacific for Bonner's wrongful conduct committed

while he was working (such as at the regular workplace and during work-related travel)

under the theory of vicarious liability or respondeat superior.

2.      This "claim" incorporated by reference all of the necessary factual

allegations for liability under the other particularized claims for which Union Pacific was

liable on a respondeat superior theory; therefore, the Court treats this "claim" merely as

an extension of the other claims for which Union Pacific would have only respondeat

superior liability.

3.      When added to the amount of the settlement allocated to the respondeat superior claims, the amount paid for this "claim" is fair and reasonable in light of the factual allegations of the Complaint.

4.      The Court concludes that Bonner is liable to Union Pacific for the full amount, $1,000.00.

## XX.

## OTHER CLAIMS NOT INCLUDED IN COMPLAINT

### A.      Legal Authority

As noted above, in *Williams v. Johnston*, 92 Idaho 292, 298, 442 P.2d 178, 184 (1968), the court determined that "a settlement agreement between plaintiff A [and] defendant B should not be the basis of imposing a liability on defendant C to indemnify B without a showing of liability of B to A."

### B.      Factual Findings

1.      Alderson's post-settlement allocation agreement with Union Pacific that apportioned the lump sum settlement among the claims included $1,000 for "other claims not specifically alleged in my Complaint but bargained for in this Release." *Trial Stipulation*, p. 4 (Docket No. 119).

2.      Alderson and Union Pacific allocated $1,000.00 for this "claim."

### C.      Conclusions of Law

1.      Because this payment was not for a claim included in the Complaint, and it is completely unclear as to what the payment covered, Union Pacific has not met its burden of proof of showing that it was liable to Alderson for any other claims, or, in turn, that Bonner is liable to it in indemnity.

2.      Bonner owes Union Pacific nothing on this claim.

## XXI.

## UNION PACIFIC'S REQUEST FOR ATTORNEY'S FEES

"Under Idaho law**,** the general rule is that in an indemnity action there is no right to recover attorney fees incurred for defending against the indemnitee's own fault," but a prevailing party may recover attorney's fees for the defense of claims it undertook for which it was not liable if the court, in its discretion, finds an award fair and equitable. *Chenery*, 115 Idaho at 288, 766 P.2d at 757; IDAHO CODE ANN. § 12-121 (2005).

Having considered the relative financial positions of the parties and having considered that Union Pacific did not prevail on many of the claims for which it sought indemnity, including some of those for which it had independent liability, the Court awards attorney's fees and costs in favor of Union Pacific in the amount of $2,000.00.

## XXII.

## PENDING MOTIONS

Also pending before the Court are several motions.  Bonner's Motion to Dismiss all Counterclaims (Docket No. 97) was mooted by the settlement agreement between Bonner and Alderson (Docket No. 110).  Union Pacific's Motion to Enforce Settlement Agreement (Docket No. 104) was mooted by the Trial Stipulation between Union Pacific and Bonner (Docket No. 119).  The parties' Joint Motion for Extension of Reply Deadlines (Docket No. 123) is granted.  The Court has considered all of the briefing filed by both parties.

## XXIII.

## ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

A.      Union Pacific's request for judgment against Gary Bonner for amounts paid to Jo Dee Alderson in settlement of this action is GRANTED in part and DENIED in part. Specifically, Union Pacific shall have judgment against Gary Bonner for the total sum of $4,000, which represents the following amounts for these causes of action: $1,000 for bad faith, $1,000 for breach of public policy, $500 for negligence, $500 for defamation, and $1,000 for vicarious liability/respondeat superior.

B.      Union Pacific's request for an award of attorney's fees and costs in the amount of $2,000.00 is GRANTED.

FINDINGS OF FACT, CONCLUSIONS OF LAW, MEMORANDUM DECISION AND ORDER - PAGE 48

C.      Bonner's Motion to Dismiss all Counterclaims (Docket No. 97) is MOOT.

D.      Union Pacific's Motion to Enforce Settlement Agreement (Docket No. 104) is MOOT.

E.      The parties' Joint Motion for Extension of Reply Deadlines (Docket No. 123) is GRANTED.



DATED:  **September 22, 2005**.

Larry M. Boyle
United States District Court